**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Norman Zwicky, | No. CV-20-02322-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Diamond Resorts Incorporated, et al., | |
| Defendants. | |

Pending before the Court are seven Motions to Dismiss Plaintiff's Second Amended Complaint ("SAC") filed by every remaining Defendant. (Docs. 39; 40; 45; 46; 47; 77; 92). Almost every Motion is fully briefed, except for Defendant Linda Riddle's Motion (Doc. 45) because Plaintiff voluntarily dismissed her with prejudice (Doc. 57).[1] The Court now issues its decision.[2]

## I.    Background

The core claim of Plaintiff Norman Zwicky's SAC is that Defendants intentionally misrepresented how much he, and other similarly situated, would have to pay for a timeshare. The history of this class action claim begins before August of 2010, when Mr. Zwicky had a "traditional timeshare interest" in a ranch in Payson, Arizona (the "Ranch"). (Doc. 61 at ¶ 8). The Ranch itself was also an asset held by the now dissolved and defunct

---

[1] Accordingly, the Court will deny Ms. Riddle's Motion to Dismiss (Doc. 45) as moot.

[2] Several Defendants requested oral argument on this matter. The Court denies these requests as the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b) (stating that a court may decide motions without oral hearings); LRCiv 7.2(f) (same).

corporation, ILX Resorts Incorporated.  (*Id.* at ¶ 39).  When ILX Resorts filed for bankruptcy, a subsidiary of Defendant Diamond Resorts Incorporated ("DRI") bought its interest in the Ranch.  (*Id.* at ¶ 40).

DRI continued to support the timeshare program, except not in the "traditional" way.  (*Id.* at ¶ 18).  Those who bought a timeshare in one of DRI's properties did not hold a "deed, leasehold assignment, or any other legal or equitable interest in real property." (*Id.* at ¶ 18).  Instead, DRI sold Mr. Zwicky and others a "Points Certificate," which served as the basis for calculating the strength of their "Reservation Privileges."  (*Id.* at ¶ 21).  Mr. Zwicky bought about 13,000 Points for "$26,395 including the stipulated trade-in value" of his old timeshare interest in the Ranch.  (*Id.* at ¶¶ 42–43).

In addition to paying for the Points, Mr. Zwicky agreed to enter into a "lifetime obligation to pay for annual Member Obligations [fees]. . . ."  (*Id.* at ¶ 44).  These fees are alleged to be about $2,500 per year.  (*Id.* at ¶ 47) ($2,337.59 in 2014 and $2,535.01 in 2016).  For Mr. Zwicky, these fees eventually far exceeded their benefits.  When totaled up over seven years, a reservation at the Ranch cost Mr. Zwicky about $600.00 per day. (*Id.* at ¶ 48).  Mr. Zwicky alleges it would have been far cheaper to simply book a reservation at another DRI property as a member of the public.  (*Id.* at ¶ 50).

As noted at the outset, the point of Mr. Zwicky's legal claims is that DRI, its various subsidiaries, and its employees, intentionally underestimated what Mr. Zwicky would have to pay in fees.  Mr. Zwicky alleges that the fees for each year were forecasted in an annual budget that "purported to be a reasonable and good faith estimate . . . ."  (*Id.* at ¶ 120).  But year after year, the actual costs were materially greater than had been predicted.  (*Id.* at ¶¶ 122, 124).  Mr. Zwicky alleges Defendants intentionally hid these costs despite knowing they would result in increased fees at the end of the year.  (*Id.* at ¶ 128).

The details of how this timeshare worked, which organizations were involved, and how the budgets came to be are somewhat convoluted.  The Court will start with the Premiere Vacation Collection Owners Association ("PVCOA"), which is an Arizona non-profit corporation.  (*Id.* at ¶ 15).  Mr. Zwicky became a member of PVCOA when he traded

in his old timeshare interest in the Ranch and acquired his Points.  (*Id.* at ¶¶ 14–21). PVCOA's Board "manages and maintains" the timeshare property, and it levies and collects annual fees form its members, like Mr. Zwicky.  (*Id.* at ¶¶ 70, 71).  Several of the Board's officers were also DRI employees.  (*Id.* at ¶¶ 111–16).

One of PVCOA's other members is a wholly-owned DRI subsidiary, Defendant ILX Acquisition, Inc. ("ILXA"), which was formed at the time of ILX Resorts, Inc.'s bankruptcy to acquire and hold properties, such as the Ranch, as a "developer."  (*Id.* at ¶¶ 59–60).  Because ILXA holds the unsold timeshare inventory, it has a "bulk membership" that grants "massive voting power" in PVCOA matters.  (*Id.* at 63–65).

Through the voting process, PVCOA delegates many of its duties to a management agent, to whom PVCOA pays a yearly management fee.  (*Id.* at ¶¶ 74, 76, 88).  This management agent is Defendant Diamond Resorts Management, Inc. ("DRMI"), another wholly-owned DRI subsidiary.  (*Id.* at ¶¶ 4, 76).

The budgeting process at the heart of this case is alleged to work as follows.  At the beginning of each year, PVCOA's Board, "in collaboration with DRMI," delivered a budget to its members that "purported to be a reasonable and good faith estimate" of what the PVCOA members' fees would be.  (*Id.* at ¶ 120).  When the end of the year came, Mr. Zwicky alleges that the actual fees were "materially" higher than was estimated.  (*Id.* at ¶¶ 126–28).  This material difference consistently appeared, starting in 2011 up to at least 2015.  (*Id.* at ¶¶ 120–34).

Mr. Zwicky alleges that the reason for this difference is because DRI slipped a "substantial portion" of its own corporate overhead charges into DRMI's management fee, which was then charged to PVCOA and subsequently passed on to PVCOA members.  (*Id.* at ¶ 88).  Mr. Zwicky alleges that none of PVCOA's budgets ever "meaningfully disclosed" this practice.  (*Id.* at ¶ 122).  He alleges the PVCOA's Board knew that its estimated budgets were "materially less than the amount DRI and its subsidiaries intended to charge . . . ." (*Id.* at ¶ 128).  Furthermore, he alleges DRI deliberately hid its practice of putting overhead charges into DRMI's management from PVCOA's members, but not to DRI shareholders.

1    (*Id.* at ¶ 138).

2           Mr. Zwicky tried to get PVCOA's Board to voluntarily disclose its financial records

3    in April 2015, but he eventually resorted to filing suit in Maricopa County Superior Court

4    "to enforce his statutory and common law inspection rights . . . ." (*Id.* at ¶ 208). On May

5    6, 2016, the Superior Court ordered PVCOA to disclose certain records to Mr. Zwicky.

6    (*Id.* at ¶ 211). He received the documents on June 6, 2016, which he alleges contain

7    evidence of Defendants' wrongdoing. (*Id.* at ¶ 212–13). On August 19, 2016, the Superior

8    Court then granted his motion to permit him to refer to the documents in filing a complaint,

9    but PVCOA quickly appealed the Superior Court's order. (*Id.* at ¶ 214–15).

10          On March 22, 2017, the Arizona Court of Appeals enjoined Mr. Zwicky from

11   disclosing any documents that PVCOA had deemed confidential. (*Id.* at ¶ 216). On

12   January 23, 2018, the Court of Appeals affirmed Mr. Zwicky's right to inspection, but it

13   reversed the Superior Court's August 19 order which had allowed the disclosure of

14   information for the purpose of bringing a lawsuit. (*Id.* at ¶ 217); *see also Zwicky v.*

15   *Premiere Vacation Collection Owners Ass'n*, 418 P.3d 1001, 1003 (Ariz. Ct. App. 2018).

16   Finally, on August 23, 2018, the Superior Court entered a stipulated order whereby Mr.

17   Zwicky could use certain information to formulate a complaint, but he was prohibited from

18   quoting or attaching confidential documents to a complaint. (*Id.* at ¶ 218–19).

19          Mr. Zwicky originally filed this action in Arizona Superior Court on August 21,

20   2020. (Doc. 1-3 at 9). It was subsequently removed to this Court on December 1, 2020.

21   (Doc. 1). The SAC brings three Claims against Defendants, who are DRI, DRMI, ILXA

22   (the "Corporate Defendants"), and six DRI employees. (*Id.* at ¶¶ 2–5). Of the six

23   individual DRI employees, three were officers on PVCOA's Board, Defendants Troy

24   Magdos, Kathy Wheeler, and Linda Riddle. (*Id.* at ¶¶ 111–16). The Court notes that

25   PVCOA itself is not a named defendant in this action. The SAC's First Claim is for

26   violation of the Racketeer Influenced and Corrupt Organizations Act of 1970 ("Federal

27   RICO"). (*Id.* at ¶¶ 145–84). The Second Claim is a civil racketeering claim brought under

28   A.R.S. § 13-3212(B) ("Arizona RICO"). (*Id.* at ¶¶ 185–97). The Third Claim is for breach

1    of fiduciary duty under the Arizona Timeshare Owners Association and Management Act.
2    (*Id.* at ¶¶ 198–221).

3          Defendants' Motions to Dismiss seek to dismiss the SAC and some Defendants
4    from this action under Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim
5    and 12(b)(2) for lack of personal jurisdiction.  The Court will begin with an evaluation of
6    whether the SAC adequately states a claim.

7    **II.    Failure to State a Claim**

8          **a.  Legal Standard**

9          Complaints must make a short and plain statement showing the pleader is entitled
10   to relief for its claims.  Fed. R. Civ. P. 8(a)(2).  There must be factual allegations from
11   which a court may reasonably infer a defendant acted unlawfully.  *Ashcroft v. Iqbal*, 556
12   U.S. 662, 678 (2009).  Simply presenting "[t]hreadbare recitals of the elements of a cause
13   of action, supported by mere conclusory statements," does not suffice to state a claim.  *Id.*
14   When a party alleges fraud, that party "must state with particularity the circumstances
15   constituting fraud or mistake." Fed. R. Civ. P. 9(b).  This must be accompanied with the
16   "who, what, when, where, and how" of the alleged fraud.  *Vess v. Ciba-Geigy Corp. USA*,
17   317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th
18   Cir.1997)).

19         A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim.
20   *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011).  Dismissal of a complaint for failure
21   to state a claim can be based on either the "lack of a cognizable legal theory or the absence
22   of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police
23   Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

24         In reviewing a motion to dismiss, "all factual allegations set forth in the complaint
25   'are taken as true and construed in the light most favorable to the plaintiffs.'"  *Lee*, 250
26   F.3d at 679 (quoting *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)).
27   But courts are not required "to accept as true a legal conclusion couched as a factual
28   allegation."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan*

1    *v. Allain*, 478 U.S. 265, 286 (1986)).

2        **b.  Standing & Derivative Actions**

3        Defendants argue that Mr. Zwicky lacks standing to bring this entire action because

4    his injury is derived from the hidden charges that were imposed upon PVCOA.  (Doc. 39

5    at 5).  An action, brought by an association's member, is derivative "'if the gravamen of

6    the complaint is injury to the corporation, or to the whole body of its stock or property

7    without any severance or distribution among individual holders.'" *Albers v. Edelson Tech.*

8    *Partners L.P.*, 31 P.3d 821, 826 (Ariz. Ct. App. 2001) (quoting *Funk v. Spalding*, 246 P.2d

9    184, 186 (Ariz. 1952)).  Members may bring direct claims when their injuries are "unique

10   to the individual member and not the association."  *Tober v. Civano 1: Neighborhood*

11   *Ass'n, Inc.*, 2013 WL 950558, at *2 (Ariz. Ct. App. Mar. 12, 2013) (citing *Albers*, 31 P.3d

12   at 826).  Here, the alleged injury resulted from fraudulently increased member fees that

13   individual PVCOA members were required to pay, not PVCOA.  Therefore, this injury's

14   gravamen cannot be fairly said to be felt by PVCOA.  Mr. Zwicky has adequately alleged

15   a direct injury, which suffices for standing purposes.

16       **c.  Statute of Limitations**

17       Defendants also bring a statute of limitations defense.  They argue Mr. Zwicky knew

18   of the alleged wrongdoing by June 2016 and failed to bring any of his claims within the

19   applicable statutes of limitation by the time he brought his action in Arizona Superior Court

20   in August 2020.  (Doc. 39 at 8).  Mr. Zwicky requests that the Court equitably toll his

21   claims' accrual because of the period from 2016 to 2018 when his action to retrieve

22   financial documents from PVCOA was on appeal.  He asks that the Court equitably toll his

23   claims until August 23, 2018.  (Doc. 61 at ¶¶ 220–21).

24       Courts may equitably toll the statute of limitations when a plaintiff shows "(1) that

25   he has been pursuing his rights diligently, and (2) that some extraordinary circumstance

26   stood in his way and prevented timely filing."  *Holland v. Florida*, 560 U.S. 631, 649

27   (2010) (cleaned up).  To show diligence a plaintiff must demonstrate that he exerted "the

28   effort that a reasonable person might be expected to deliver under his or her particular

circumstances." *Doe v. Busby*, 661 F.3d 1001, 1015 (9th Cir. 2011).  The extraordinary circumstances must cause the untimeliness and make it impossible to file on time.  *Booth v. United States*, 914 F.3d 1199, 1207 (9th Cir. 2019).

Defendants appear to concede that when the Arizona Court of Appeals' involvement prevented Mr. Zwicky from filing a complaint from March 22, 2017 until August 23, 2018. (Doc. 39 at 10).  But they argue, Mr. Zwicky could have filed this action in the seven months prior to the injunction, which is the time between when the Superior Court allowed a complaint to reference the PVCOA's documents, August 19, 2016, until the time of the Court of Appeals' injunction on March 22, 2017.  (*Id.*)  They argue this seven-month period, plus the time after August 23, 2018, when the Superior Court again permitted a complaint to be filed, sum to a 31-month delay.  Defendants argue that "Plaintiff offers no explanation" for why it took this long.  (*Id.*)

To begin, the Court notes that, by Defendants' own calculation, a 31-month delay would only prohibit the breach of fiduciary duty claim, which has a two-year statute of limitations.  *See Coulter v. Grant Thornton, LLP*, 388 P.3d 834, 838 (Ariz. Ct. App. 2017) ("A two-year limitations period applies to claims for breach of fiduciary duty, professional negligence, and negligent misrepresentation.").   An Arizona RICO claim has a three-year statute of limitations from the time the violation was discovered.  A.R.S. § 13-2314.04(F). And a Federal RICO claim has a four-year statute of limitations from the time the violation was discovered.  *Pincay v. Andrews*, 238 F.3d 1106, 1108–09 (9th Cir. 2001).

In his Response, Mr. Zwicky notes that the Superior Court did not enter final judgment in his action to retrieve documents until September 15, 2016.  (Doc. 51 at 13). He argues he knew that filing an action immediately after the Superior Court's order was finalized would be futile because, based on Defendants' remarks, they intended to immediately file an appeal.  (*Id.*)  And on October 14, 2016, Defendants did file an appeal. (*Id.*)  Under these circumstances, Mr. Zwicky argues, filing an action between would have been unreasonable.  (*Id.*)

Here, the Court finds that it would not have been reasonable for Mr. Zwicky to file

a complaint between September and October of 2016, knowing that the opposing party would appeal the order permitting him to file a complaint.  The appeal itself made it impossible to file a complaint alleging breach of fiduciary duty within two years of when Mr. Zwicky learned of the alleged wrongdoing.  Therefore, the Court will equitably toll the statute of limitations until August 23, 2018.  Mr. Zwicky timely brought all his claims, which the Court will now discuss.

### d.  Breach of Fiduciary Duty

Defendants argue Mr. Zwicky's Third Claim for breach of fiduciary duty fails because they do not owe him any duty.  The SAC alleges that Defendants do owe a duty, which is rooted in the Arizona Timeshare Owners Association and Management Act (the "Timeshare Act" or "Act").  (*See* Doc. 61 at ¶ 200).

Here, the relevant section of the Act is A.R.S. § 33-2203, which governs the management of a timeshare.

> A. For each timeshare plan and timeshare property in this state, the developer shall provide in the timeshare instrument for a managing entity. The managing entity may be the developer, a separate manager or management firm or an association. . . .

> B. The managing entity shall act in the capacity of a fiduciary to the owners of timeshare interests in the timeshare plan.

> C. The association or other managing entity may enter into a contract with a manager or management firm to provide some or all of the management services to the timeshare plan or timeshare property, but the manager or management firm shall not be considered the managing entity of the timeshare plan or timeshare property.

A.R.S. §§ 33-2203(A)–(C).  Plaintiff concedes that as alleged in the SAC, ILXA is the "developer," PVCOA is the "managing entity," and DRMI is the "manager or managing firm."  (Doc. 51 at 25).

By the Act's plain language, PVCOA, as the managing entity owes Mr. Zwicky a fiduciary duty. § 33-2203(B).  But PVCOA is not a named defendant.  Instead, Mr. Zwicky has elected to bring his claims against ILXA, DRMI, and DRI, the developer,  managing firm, and parent company, respectively.   He also brings his claims against some of

1  PVCOA's Board members, who are also DRI employees.  But by its plain language, the

2  Timeshare Act does not place fiduciary responsibilities on any of these parties.

3      To this, Mr. Zwicky makes three arguments.  The first is that Defendants owe

4  common law fiduciary duties to him.  (Doc. 51 at 25).  Second, he argues the Timeshare

5  Act implies that ILXA, DRMI, and DRI owe him fiduciary duties.  (Doc. 51 at 26).  Finally,

6  he argues that those Defendants that did not owe fiduciary duties are nonetheless jointly or

7  vicariously liable for the claim because of their role in aiding the wrongful conduct.

8              ***i.*  Common Law Duties**

9      Mr. Zwicky argues the director of a corporation owes a fiduciary duty to the

10  corporation itself and its shareholders.  (*Id.* at 20 (citing *Atkinson v. Marquart*, 112 Ariz.

11  304, 306 (1975)).  But he need not resort to the common law for this proposition because

12  Arizona statute establishes the standard of care for both directors and officers.  A.R.S. §§

13  10-830 (establishing fiduciary duties for directors); 10-842 (establishing fiduciary duties

14  for officers); *see also Wichansky v. Zowine*, 2016 WL 11002479, at *2 (D. Ariz. Apr. 19,

15  2016) (finding that Arizona's common law duties for directors and officers did not survive

16  their statutory establishment).  Therefore, Mr. Zwicky may fairly say that those Defendants

17  who served as the director and officers for PVCOA owe him a fiduciary duty.  This would

18  include Mr. Magdos (Director and President of PVCOA), and Ms. Wheeler (Director,

19  Secretary, and Treasurer).  (Doc. 61 at ¶¶ 111–14).

20      Mr. Zwicky also argues that ILXA owes him a common law fiduciary duty as the

21  controlling PVCOA member.  (Doc. 51 at 25).  But, for reasons explained further below,

22  the SAC fails to allege what ILXA, as well as what Defendants David Palmer and Stephen

23  Cloobeck, did or did not do with sufficient particularity.  Therefore, because the Court will

24  dismiss these three parties, it need not consider whether they owe Mr. Zwicky a fiduciary

25  duty.

26              ***ii.*  Statutory Duties**

27      Mr. Zwicky argues that DRI and DRMI's fiduciary duties stems from the Timeshare

28  Act's intent to avoid creating "an easily manipulated safe haven," whereby a corporation

- 9 -

1  with a powerful influence on the managing entity could escape fiduciary responsibilities.

2  (Doc. 51 at 26).  This inference, Mr. Zwicky argues, is supported by language saying "[t]he

3  managing entity may be the developer, a *separate* manager or management firm or an

4  association."  (*Id.* (citing § 33-2203(A))) (emphasis added).  According to Mr. Zwicky, the

5  word "separate" shows the legislative intent to keep the developer, managing entity, and

6  managing firm as separate legal entities.  (*Id.*)

7         The Court finds this interpretation leans too heavily on the lone word "separate."  In

8  fact, the full sentence says the developer "*may*" select the developer or a separate

9  management firm.  The sentence is permissive, not restrictive as Mr. Zwicky suggests.

10  Therefore, the Act's language does not evidence the Arizona legislature's intent to limit

11  the corporate structure governing the managing entity.   Accordingly, neither DRI nor

12  DRMI owe Mr. Zwicky a fiduciary duty, and they cannot be liable for any breach of their

13  own fiduciary duty.

14                        *iii.* **Joint and Vicarious Liability**

15         Finally, Mr. Zwicky argues that those Defendants who do not owe common law or

16  statutory fiduciary duties are still liable under the doctrines of joint and vicarious liability.

17  (Doc. 61 at ¶ 205).  Without citing to any authority, Mr. Zwicky claims such liability exists

18  under "aiding and abetting" and "civil conspiracy" principles.  (Doc. 51 at 21).  But simply

19  gesturing towards amorphous principles without providing further explanation to the Court

20  will not suffice.  Mr. Zwicky's joint and vicarious liability argument is too short and too

21  opaque to satisfy federal pleading standards.  *See* Fed. R. Civ. P. 8(a)(2).

22         Furthermore, aiding and abetting as well as civil conspiracy are themselves

23  independent torts, not instruments to bind parties to duties they would not otherwise have.

24  *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395*

25  *Pension Tr. Fund*, 38 P.3d 12, 23, 36 (Ariz. 2002) (citing *Witzman v. Lehrman, Lehrman*

26  *& Flom*, 601 N.W.2d 179, 186 (Minn. 1999) ([A]iding and abetting liability does not

27  require the existence of, nor does it create, a pre-existing duty of care . . . .)).  And the SAC

28  does not bring an independent claim for either aiding and abetting or civil conspiracy.

1    For these reasons the Court will not hold those Defendants who do not owe a

2    statutory or common law duty of care liable for Mr. Zwicky's breach of fiduciary duty

3    claim.  The only parties who the Court finds owe a duty of care are Mr. Magdos and Ms.

4    Wheeler.  Every other Defendant shall not be liable for this claim.

5    **e.  RICO Claims**

6    Defendants next argue that both the Arizona and Federal RICO claims fail to

7    adequately state a claim.  To state a claim under Arizona's RICO statute, Mr. Zwicky must

8    show he was injured through racketeering and "that the act which caused the injury was

9    performed for financial gain, was one of the illegal acts enumerated in the statute, and was

10   chargeable and punishable in accordance with the requirements of the statute."  *State ex*

11   *rel. Corbin v. Pickrell*, 667 P.2d 1304, 1311–12 (Ariz. 1983).  The illegal act alleged in the

12   SAC is defined under A.R.S. § 13-2110(A), by which a "person who, pursuant to a scheme

13   or artifice to defraud, knowingly obtains any benefit by means of false or fraudulent

14   pretenses, representations, promises or material omissions is guilty of a class 2 felony."

15   Under a Federal RICO claim, Mr. Zwicky must show "(1) conduct (2) of an

16   enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5)

17   causing injury to plaintiff's business or property." *Living Designs, Inc. v. E.I. Dupont de*

18   *Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (internal quotation marks and citation

19   omitted).  The racketeering activities alleged here are mail and wire fraud.  (Doc. 61 at ¶

20   156) (citing 18 U.S.C. §§ 1341, 1343).  These species of fraud "can be premised on either

21   a non-disclosure or an affirmative misrepresentation." *Eller v. EquiTrust Life Ins. Co.*, 778

22   F.3d 1089, 1092 (9th Cir. 2015).  In cases of non-disclosure, a plaintiff must show an

23   independent fiduciary or statutory duty underlying the fraud.  *Id.*  However, "[p]roof of an

24   affirmative, material misrepresentation supports a conviction of mail fraud without any

25   additional proof of a fiduciary duty."  *United States v. Benny*, 786 F.2d 1410, 1418 (9th

26   Cir. 1986).

27   Defendants argue that the Arizona and Federal RICO Claims fail because Mr.

28   Zwicky fails to establish a fiduciary duty underlying the alleged fraud, that his claims are

1   really just breach of contract claims, and that he fails to plead with the requisite particularity

2   for fraud claims.  (Doc. 39 at 11–14).

3   ### i.  Fiduciary Duties

4   The first argument Defendants make focuses on the elements of the Federal RICO

5   Claim.  First, they argue Mr. Zwicky's allegations are premised on non-disclosure, which

6   requires showing a fiduciary duty.  (Doc. 39 at 12).  The Court has already determined that

7   only two Defendants owe a fiduciary duty.  But Mr. Zwicky argues that his Claim is based

8   on both non-disclosure and affirmative misrepresentation.  (Doc. 51 at 17–18).  And claims

9   of affirmative misrepresentation do not require that a defendant owe a duty. *Benny*, 786

10  F.2d at 1418.

11  The question, therefore, is whether an estimated budget, purportedly made in good

12  faith, that knowingly omits certain expenses constitutes non-disclosure or an affirmative

13  misrepresentation.  The Court finds that it could be both.  The affirmative misrepresentation

14  is that the budget estimate was made in good faith, when, as alleged in the SAC, it was not.

15  Because the RICO Claims could be construed as based upon an affirmative

16  misrepresentation, whether Defendants owe Mr. Zwicky a fiduciary duty is irrelevant.

17  ### ii.  Contract Claims

18  The second argument Defendants make is that Mr. Zwicky's RICO Claims are

19  simply breach of contract claims, not violations of federal law.  Mr. Zwicky alleges that he

20  was contractually obligated to pay the fees imposed by PVCOA.  (Doc. 61 at ¶ 44).  Mr.

21  Zwicky also alleges that one of PVCOA's governing documents states that the amount it

22  pays to a managing firm will not exceed fifteen percent of what is assessed on the members

23  each year, unless authorized by a vote of PVCOA's Board.  (*Id.* at ¶ 84).  Defendants cast

24  this provision as the "contractual basis" for Mr. Zwicky's claims. (Doc. 39 at 13).  But the

25  Court is not convinced. The basis of Mr. Zwicky's claims is not that DRMI was paid too

26  much, it is that DRMI hid what its true management fee would be.  The Court finds that

27  this is not a contract claim hiding as a RICO claim.

28  / / /

### *iii.* Pleading with Particularity

Finally, Defendants argue the SAC fails to plead the predicate acts with particularity, as required by Federal Rule of Civil Procedure 9(b).  (Doc. 39 at 14).  Mr. Zwicky argues that he does not have to argue the predicate acts with particularity.  (Doc. 51 at 15).  But Mr. Zwicky's position lacks support.  When alleging fraud, Federal Rule of Civil Procedure 9(b) requires parties "state with particularity the circumstances constituting fraud or mistake."  Mr. Zwicky's claims of fraud brought under his RICO Claims are not exempt from this requirement.  His claims "require particularized allegations [of] the factual circumstances of the fraud itself."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007) (finding that Rule 9(b) applies to Federal RICO claims).  "[T]he pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."  *Id.* at 553 (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  Put simply, Mr. Zwicky's allegations must detail "the who, what, when, where, and how" of the alleged fraud.  *Cooper*, 137 F.3d at 627.

ILXA specifically argues that the SAC fails to allege what it did or did not do with particularity.  (Doc. 39 at 14).  Upon review of the SAC, the court agrees. While the SAC alleges that ILXA was a controlling member of the PVCOA Board, it fails to detail how it participated in the alleged fraud.  (Doc. 61 at ¶ 65).  Mr. Zwicky argues that the SAC adequately alleges a breach in ILXA's fiduciary duties because ILXA declined to give up its voting powers.  (Doc. 51 at 21).  But that does not explain its role in the fraudulent charges.  In briefing, Mr. Zwicky argues ILXA was "collaboratively preparing and disseminating fraudulent budgets and financial statements through the mails and by wire." (*Id.*)  But the specifics of these allegations are nowhere to be found in the SAC.  Because this dearth of factual allegations relates to all claims against ILXA, the Court will dismiss it from this action.

Several individual Defendants, Ms. Wheeler, Mr. Magdos, Mr. Palmer, and Mr. Cloobeck also argue that the SAC fails to allege facts specifying their participation in the

alleged wronging. (Docs. 40; 46; 77; 92).  "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme." *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (cleaned up). As to Ms. Wheeler and Mr. Magdos, the SAC identifies that they, as officers and directors of PVCOA, were "responsible for preparing and disseminating its annual Budgets and levying its annual assessments—including the DRI Indirect Corporate Costs concealed therein—while simultaneously acting as executive-level employees of DRI . . . ."  (Doc. 61 at ¶ 150).  The Court finds that this alleges their role with sufficient particularity.

However, when it comes to Mr. Palmer and Mr. Cloobeck, the most that the SAC alleges is that they, on information and belief, "routinely reviewed" the budgets and were "aware" that DRI was concealing its overhead.  (*Id.* at ¶¶ 101–02, 105–06).  The Court finds that these allegations are insufficient to identify what role the Mr. Palmer and Mr. Cloobeck played in the alleged wrongdoing.  Therefore, the Court will dismiss Mr. Palmer and Mr. Cloobeck from this action.

### f.  Director Exculpation

Ms. Wheeler and Mr. Magdos also argue PVCOA's Articles bar Mr. Zwicky's claims against them.  (Docs. 40 at 6; 46 at 6).  Arizona statute provides that the articles of incorporation may limit the liability of a director for money damages, except for the intentional infliction of harm on an association's members.  A.R.S. § 10-3202(B)(1). While these two Defendants argue that the SAC fails to allege specific facts showing they knew their actions were causing Mr. Zwicky harm, "intent . . . may be alleged generally." Fed. R. Civ. P. 9(b).  To that end, the SAC alleges that the PVCOA Board, on which Ms. Wheeler and Mr. Magdos served, knew it was proposing budges which did not accurately represent what they intended to charge its members.  (Doc. 61 at ¶ 22).  The Court finds that the PVCOA's director exculpation clause does not bar the claims against them.

### III.    Personal Jurisdiction

The final matter to address is DRI's argument that the Court lacks personal jurisdiction over it.  (Doc. 47 at 4).

- 14 -

1

### a. Legal Standard

A federal district court has personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Arizona courts may exercise personal jurisdiction "to the maximum extent permitted by the Arizona Constitution and the United States Constitution." Ariz. R. Civ. P. 4.2(a). If constitutional due process requirements are satisfied, the Court can exercise personal jurisdiction over DIR. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Due process requires DRI have "certain minimum contacts" such that the lawsuit "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Since *International Shoe*, courts separate personal jurisdiction into "general" and "specific" jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A defendant is subject to a court's general jurisdiction where its activities in the forum state are "so continuous and systematic as to render [it] essentially at home in the forum State." *Id.* Specific jurisdiction, on the other hand, exists when the lawsuit "aris[es] out of or [is] related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). If a court lacks general and specific jurisdiction over a defendant, the court must dismiss the defendant under Federal Rule of Civil Procedure 12(b)(2).

Once a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff must make a *prima facie* showing of facts showing that jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The Court must take uncontroverted allegations to be true and any conflict must be resolved in the plaintiff's favor. *Id.*

### b. Specific Jurisdiction

The Court will begin by assessing specific jurisdiction. The Ninth Circuit separates specific jurisdiction into three prongs for unintentional tort and breach of contract disputes:

1) the nonresident defendant must have purposefully availed himself of the

privilege of conducting activities in the forum by some affirmative act or conduct; 2) plaintiff's claim must arise out of or result from the defendant's forum-related activities; and 3) exercise of jurisdiction must be reasonable.

*Roth v. Garcia Marquez*, 942 F.2d 617, 620–21 (9th Cir. 1991); *see also Holland*, 485 F.3d at 460 (holding that the "purposeful direction" standard is only appropriate in intentional tort cases and that "purposeful availment" is better suited for untargeted torts).   If the plaintiff establishes that the first two prongs are met, the court will have specific jurisdiction unless the defendant can "present a compelling case" that jurisdiction would be unreasonable.  *See Schwarzenegger*, 374 F.3d at 802; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985).

Purposeful direction is evaluated under the *Calder* effects test, which requires showing that a defendant committed (1) an intentional act, (2) expressly aimed at the forum state, (3) that defendant had reason to know would the act likely cause injury in that state. *Schwarzenegger*, 374 F.3d at 803.

Mr. Zwicky alleges that DRI intentionally and fraudulently made PVCOA members pay for its overhead.  (Doc. 67 at 11).  He alleges DRI did this, in part, by stacking the PVCOA Board, an Arizona non-profit corporation, with DRI employees.  (*Id.*)  By shifting its overhead costs to members of an Arizona corporation, DRI would have known that any harm would likely be felt in Arizona.

DRI argues that its employees on PVCOA's Board were not acting in their capacity as DRI employees.  (Doc. 84 at 7).  For support, DRI argues that Mr. Zwicky admitted that these employees' conduct "relate only to their separate capacities as Directors of PVCOA." (*Id.*)  But DRI misstates Mr. Zwicky's position, which is, in fact, the complete opposite. (*See* Doc. 67 at 8) ("Each of these DRI employees, acting within the course and scope of his or her employment with DRI (as well as their conflicted dual role as [PVCOA] officers and directors) . . . directly participated in a scheme to defraud [Mr.] Zwicky and the 25,000 other private timeshare owners of PVCOA.").  DRI essentially asks the Court to trust it when it says DRI employees, constituting the majority of the Board of an entity that hired a DRI subsidiary to manage its timeshares and subsequently charge the entity's members

- 16 -

1    for those services, were simply not acting in their capacity as DRI employees.

2        But the Court need not decide whether it believes DRI's assertion because, for

3    purposes of this jurisdictional analysis, the Court must accept Mr. Zwicky's allegations.

4    *See Schwarzenegger*, 374 F.3d at 800.  The Court finds that Mr. Zwicky has shown that

5    DRI purposely availed itself of Arizona's laws and that his claims arise from DRI's

6    activities in Arizona.  The Court also finds DRI presents no compelling reasons why

7    exercising jurisdiction would be unreasonable.  Ultimately, the Court is satisfied that it may

8    exercise personal jurisdiction over DRI.

9    **IV.    Conclusion**

10       The Court finds that Mr. Zwicky has standing to bring his claims, which were timely

11   filed.  The Court will dismiss Defendants ILXA, Mr. Palmer, and Mr. Cloobeck, as the

12   SAC fails to allege their involvement with particularity.  The Court will dismiss the John

13   and Jane Doe Defendants, whom Mr. Zwicky noted he intended to dismiss.  (Doc. 76 at 2).

14   The remaining Defendants are DRI, DRMI, Mr. Magdos, and Ms. Wheeler.  The SAC's

15   Third Claim for breach of fiduciary duty may only be brought against Mr. Magdos and Ms.

16   Wheeler.  However, the SAC's Arizona and Federal RICO Claims may be brought against

17   all remaining Defendants.

18       Accordingly,

19       **IT IS HEREBY ORDERED** that the Motions to Dismiss brought by Defendants

20   Diamond Resorts Management Inc. and ILX Acquisition Inc. (Doc. 39), Kathy Wheeler

21   (Doc. 40), Troy Magdos (Doc. 46), and Diamond Resorts International (Doc. 47) are

22   **denied** in part and **granted** in part as set forth in this Order.  The Clerk of Court shall

23   kindly dismiss ILX Acquisition Inc., from this action.

24       **IT IS FURTHER ORDERED** that the Motions to Dismiss brought by Defendants

25   David Palmer (Doc. 77) and Stephen Cloobeck (Doc. 92) are **granted**.  The Clerk of Court

26   shall kindly dismiss Mr. Palmer and Mr. Cloobeck from this action.

27       **IT IS FURTHER ORDERED** that the Motion to Dismiss filed by Defendant Linda

28   Riddle (Doc. 45) is **denied** as moot.

1   **IT IS FINALLY ORDERED** that the Clerk of Court shall kindly dismiss the John
2   and Jane Doe Defendants.

3   Dated this 30th day of June, 2021.

Honorable Diane J. Humetewa
United States District Judge