**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Norman Zwicky, et al., | No. CV-20-02322-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| Diamond Resorts Incorporated, et al., | |
| Defendants. | |

Plaintiffs Norman Zwicky ("Zwicky"), George Abarca ("Abarca"), Vikki Osborn ("Osborn"), and Elizabeth Stryks-Shaw ("Stryks-Shaw") (collectively "Plaintiffs" or "Class Representatives") previously filed an "Unopposed Motion for Preliminary Certification of Class for Settlement Purposes Only, Preliminary Approval of Settlement, and Approval of Notice" (Doc. 129) (the "Initial Motion"), which the Court granted in part and denied in part. (Doc. 136). Although the Court granted conditional certification of the Class, it denied without prejudice the proposed Settlement Agreement and Release (Doc. 129-1) (the "Proposed Settlement Agreement" or "Agreement"). (Doc. 136 at 17–28). Plaintiffs have since filed an "Unopposed Renewed Motion for Preliminary Approval of Settlement, Approval of Notice" (Doc. 144) (the "Renewed Motion"). Plaintiffs have sufficiently supplemented the record with appropriate documentation regarding the Proposed Settlement Agreement. So, the Court grants Plaintiffs' Renewed Motion.

/ / /

## I.      Background[1]

Plaintiffs are all current or former owners of timeshare interests that were acquired or sold by Defendants Diamond Resorts International, Inc. ("DRI") and Diamond Resorts Management, Inc. ("DRMI").[2]  (Doc. 109 at ¶ 12).  Defendants Troy Magdos and Kathy Wheeler (collectively the "Defendant Individuals") are employees of DRI.  (*Id*. at ¶¶ 4, 97, 99).   This suit stems from a 2015 state action Zwicky filed in the Maricopa County Superior Court seeking to enforce his statutory and common law inspection rights as a timeshare owner. *See Zwicky v. Premiere Vacation Collection Owners Ass'n*, No. CV2015-051911 (Ariz. Super. 2015) (the "State Inspection Action").  Zwicky questioned why he was charged annual assessments and fees that were materially higher than previous years.  *See generally id*.

In August 2021, Plaintiffs filed their Third Amended Class Action Complaint ("TAC") (Doc. 109) and brought three causes of action: Count I against all Defendants for violation of the Federal Racketeering Influenced and Corrupt Organization Act ("Federal RICO"), 28 U.S.C. §§ 1961 *et seq*.; Count II against all Defendants for violation of the Arizona Civil Racketeering Statute ("Arizona RICO"), A.R.S. § 13-2312(B); and Count III against Defendant Individuals only for breach of fiduciary duty.  (*Id*. at ¶ ¶ 130–85).   In short, the TAC alleged Defendants failed to disclose certain charges and overcharged timeshare owners annual assessments by imposing those hidden costs as ordinary common expenses.  (*See* Doc. 144 at 4).

In its November 15, 2022, Order (Doc. 136) (the "2022 Order"), the Court preliminary certified this matter as a class action on behalf of the following class:

/ / /

/ / /

/ / /

---

[1] The Court has discussed the background of this case at length in its prior Orders (Docs. 102 at 1–5; 136 at 1–4) and so the Court will not repeat it here.

[2] DRMI is a property management company and wholly owned subsidiary of DRI. (Doc. 109 at ¶ 77).

All current and former members of the Premiere Vacation Collection Owners Association who were assessed Assessments for any Calendar year(s) from 2011 through and including 2022, excluding ILX Acquisition and any entity that received any bulk transfer/assignment of ILX Acquisition's Bulk Membership in the Premiere Vacation Collection Owners Association. Excluded from the Class are Diamond Resorts International, Inc., Diamond Resorts Management, Inc., their parents, subsidiaries, successors, affiliates, current officers and directors and all judges assigned to this litigation and their immediate family members.

(*Id*. at 29–30) (the "Class" or "Class Members"). The Court denied the Proposed Settlement without prejudice because it was unsupported by appropriate documentation. (*Id*. at 17–28).

## II.   Legal Standard

Rule 23[3] governs the requirements and procedures for class action settlements. The Ninth Circuit has declared a strong judicial policy that favors settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Hyundai and Kia Fuel Economy Litig*., 926 F.3d 539, 556 (9th Cir. 2019). When the "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both [1] the propriety of the certification and [2] the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *see also In re Bluetooth Headset Products Liab. Litig*., 654 F.3d 935, 949 (9th Cir. 2011) (holding when parties seek approval of a settlement negotiated prior to formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement"). The second inquiry is at issue as the Court already preliminary certified this class action for settlement purposes.

The "court must carefully consider 'whether a proposed settlement is fundamentally fair, adequate, and reasonable,' recognizing that '[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness . . . .'" *Staton*, 327 F.3d at 952 (quoting *Hanlon*, 150 F.3d at 1026); *see*

---

[3] Unless where otherwise noted, all Rule references are to the Federal Rules of Civil Procedure.

*also* Fed. R. Civ. P. 23(e) (outlining class action settlement procedures).  Procedurally, the approval of a class action settlement takes place in two stages.  In the first stage of the approval process, "the court preliminarily approve[s] the Settlement pending a fairness hearing, temporarily certifie[s] the Class . . . , and authorize[s] notice to be given to the Class."  *West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006) (quoting *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. 553, 556 (W.D. Wash. 2004)).  Therefore, in this Order the Court will only "determine [ ] whether a proposed class action settlement deserves preliminary approval" and lay the groundwork for a future fairness hearing.  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

At the fairness hearing and after notice to the Class, the Court will entertain any of the Class's objections to (1) the treatment of this litigation as a class action and/or (2) the terms of the Proposed Settlement Agreement.  *See Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989) (prior to approving the dismissal or compromise of claims containing class allegations, district courts must, pursuant to Rule 23(e), hold a hearing to "inquire into the terms and circumstances of any dismissal or compromise to ensure that it is not collusive or prejudicial").  Following the fairness hearing, the Court will make a final determination as to whether the parties should be allowed to settle the class action under the terms agreed upon.  *DIRECTV*, 221 F.R.D. at 525.

## III.   Discussion

In the 2022 Order, the Court identified three deficiencies with respect to Plaintiff's Initial Motion and the Proposed Settlement Agreement: (1) there was insufficient documentation to adequately assess the parties' rationale behind arriving at the Agreement; (2) there appeared to be a facial inequity when comparing the relief provided to the Class and the amount of attorneys' fees requested; and (3) the parties did not provide any documents to support their calculations behind the proposed Settlement Fund.  (*See* Doc. 136 at 29).  In their Renewed Motion, Plaintiffs supplement the record and argue the Court should approve the Proposed Settlement Agreement that was

attached to their Initial Motion.  (*Compare* Doc. 129-1 *with* Doc. 145-5).  Plaintiffs also request the Court to approve their proposed methods and forms of notice to the Class and set a date for a fairness hearing.[4]  The Court will address each request in turn.

### A. Preliminary Evaluation of Fairness of Proposed Class Action Settlement

The Court first considers whether to the preliminarily approve the Proposed Settlement Agreement.  Rule 23(e) requires courts to evaluate a proposed settlement for fundamental fairness, adequacy, and reasonableness before approving it.  Fed. R. Civ. P. 23(e)(2).  Ultimately, a determination of the fairness, adequacy, and reasonableness of a class action settlement involves consideration of the following eight factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.2004) (citation omitted). Some of the *Churchill* factors, however, cannot be fully assessed until the court conducts its fairness hearing.  *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008).  At the preliminary approval stage, courts need only evaluate "whether the proposed settlement [1] appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious-deficiency, [3] does not improperly grant preferential treatment to class representatives or segments of the class and [4] falls within the range of possible approval."  *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 363 (D. Ariz. 2009) (internal quotation and citation omitted).  In its 2022 Order, the Court conducted a cursory review of the Proposed Settlement Agreement in accordance with these four factors.

The Court initially rejected the Agreement because it was deficient under the first,

---

[4] Plaintiffs also request the Court to set a deadline for filing a separate motion for attorneys' fees and costs.  The Court finds it premature to consider this request and will not do so here.

second, and fourth factors.[5]  As to the first factor, Plaintiffs did not provide sufficient information from which the Court could adequately assess the content of the parties' settlement negotiations or the sufficiency of evidence used therein.  (Doc. 136 at 19–20).  As to the second factor, the Court was concerned with the facial inequities and conflicts of interest regarding the parties' clear-sailing agreement for what appeared to be a disproportionate and unsubstantiated award of attorneys' fees.  (*Id*. at 21–24).  As to the fourth factor, Plaintiffs did not provide sufficient documentation demonstrating how the proposed Settlement Fund amount was adequately justified.  (*Id*. at 27–28).  In short, Plaintiffs failed to show their work.  The Court now considers whether Plaintiffs' Renewed Motion rectifies these deficiencies.

### 1.    Factor One: Settlement Process

The parties' arrived at the Agreement after an all-day, in-person mediation session with Retired Magistrate Judge Edward Infante ("The Hon. Infante"), who is an experienced private mediator and former Chief Magistrate Judge (Doc. 129-7 at 3).  The Court found "[t]he parties' attestations regarding the process of mediation evince[d] good faith negotiations and a thorough process for arriving at settlement" but was unpersuaded because "Plaintiffs d[id] not provide any supplemental documents that concretely show what their 'numerous offers and counter offers' and initial term sheet entailed." (Doc. 136 at 20).  There was not enough information for the Court to assess "the strengths and weaknesses of the parties' claims and defenses . . . and consider how class members will benefit from settlement" to determine if it was fair and adequate.  *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 397 (C.D. Cal. 2007).

In their Renewed Motion, Plaintiffs outline in detail the substance of the parties' mediation sessions with the Hon. Infante.  For example, Plaintiffs explain the progression in which the parties revised their proposal settlement structures and the contents of the offers and counteroffers.  (Doc. 144 at 27–33).  Plaintiffs also attach the initial Terms

---

[5] The Court approved the Agreement with respect to the third factor, finding the proposed incentive awards to Plaintiffs did not improperly grant preferential treatment to class representatives or segments of the class.  (Doc. 136 at 25–27).

Sheet (Doc. 145-4) the parties generated at the close of mediation, identify the material changes between the Term Sheet and Proposed Settlement Agreement, and explain why the Agreement is a better deal for the Class.  (Doc. 144 at 31–43).  These clarifications show the parties engaged in back-and-forth negotiations, meaningfully evaluated the claims and defenses at issue in the case, and settled on an Agreement that benefitted the class through a lump sum payment rather than a multi-year payment plan.  The settlement process appears to be fair and adequate.

The Court was also concerned that the parties arrived at a settlement before they completed extensive discovery.  *See Acosta*, 243 F.R.D. at 397 ("Federal courts are inherently skeptical of pre-certification settlements, precisely because such settlements tend to be reached quickly before the plaintiffs' counsel has had the benefit of the discovery necessary to make an informed evaluation of the case and, accordingly, to strike a fair and adequate settlement.").   While Plaintiffs vaguely mentioned the negotiations were aided by disclosures mandated by the Arizona Superior Court in the State Inspection Action and Defendants' summaries of their indirect corporate costs, Plaintiffs did not provide or cite to any of those documents in their Initial Motion. (Doc. 136 at 20).   These gaps prevented the Court from evaluating the content of the parties' negotiations or the sufficiency of evidence used by the parties.

Plaintiffs now supply those documents in their Renewed Motion.  (*See* Docs. 144-4; 144-5; 144-7; 144-8) (State Inspection Action disclosure orders); (*see also* Docs. 144-6; 144-9) (Defendants' summaries of indirect corporate costs).  Plaintiffs also aver they engaged in informal investigation of DRI's public filings to better understand DRI's business operations, "and to determine (among other things) whether [DRI's alleged] overhead-shifting practice was sanctioned or disclosed."  (Doc. 144 at 5).  Of these documents include DRI's filings at the United States Securities and Exchange Commission, Arizona Department of Real Estate, and during various bankruptcy proceedings.  (Doc. 144 at 5–6); (*see e.g.*, Doc. 145-1) (Arizona Department of Real Estate Electronic Filing).  Moreover, Plaintiffs' Renewed Motion includes the discovery

documents facilitated in the present action.  (*See* Doc. 144-10).  The Court agrees that the discovery obtained in the State Inspection Action and this matter demonstrates the parties' efforts to investigate before settlement are satisfactory.

In sum, Plaintiffs have sufficiently supplemented the record to demonstrate the parties engaged in a good-faith mediation session.  There is no evidence to suggest that the Proposed Settlement Agreement was negotiated in haste or collusion.  *See Hanlon*, 150 F.3d at 1027.  Thus, the Court is preliminarily satisfied that the Agreement was the product of serious, informed negotiations.

### 2.      Factor Two: Obvious Deficiencies

Next, the Court will reevaluate the terms of the Agreement for obvious deficiencies.  The Ninth Circuit has identified three "subtle signs" of deficiencies, which it refers to as the *Bluetooth* factors: "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a clearsailing arrangement, under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a kicker or reverter clause that returns unawarded fees to the defendant, rather than the class."  *McKinney-Drobnis*, 16 F.4th at 607–08 (citation omitted); *In re Bluetooth*, 654 F.3d at 947 (internal quotation and citation omitted).  In the 2022 Order, the Court rejected the Agreement due to concerns arising under the first and second *Bluetooth* factor.[6]

### a.      Disproportionate Distribution of the Settlement to Counsel

The Court first took issue with the proportionality between the agreed upon award of attorney's fees and the results obtained for the Class.  In their Initial Motion, Plaintiffs requested approval of "25% of the settlement fund ($3,250,000) as an award of attorneys' fees and expenses (currently estimated at $25,000)."   (Doc. 129 at 4).   The Court

---

[6] The Court found the third *Bluetooth* factor weighed against collusion because there was no reverter clause and the Proposed Settlement Agreement required any undistributed funds to be distributed to Habitat for Humanity as a *cy pres* recipient.  (Doc. 136 at 24–25).  The Court need not address this factor again.

construed this statement to mean that the parties presumptively agreed to a fee award that was 134 times the amount of actual fees estimated at $25,000.  (Doc. 136 at 23 citing Docs. 129-1 at 44; 129 at 4).  In their Renewed Motion, Plaintiffs now clarify their "counsels' statement was ambiguous and perhaps poorly worded" and that "their estimate of $25,000 was intended to refer to *expenses only*.  Not fees."  (Doc. 144 at 25).  Plaintiffs also attach declarations by their Counsel as preliminary examples of actual hours billed to justify their request for a 25% fee award.  (Docs. 145-6; 145-7).

In light of Plaintiffs' clarification and the Ninth Circuit recognition that "25% of the fund as the benchmark for a reasonable fee award," the Court is preliminarily assured there is no danger of disproportionate distribution of the settlement to Counsel.  *In re Bluetooth*, 654 F.3d at 942.

### b.  Clear-sailing Arrangement for Attorneys' Fees

The Court also took issue with the parties' clear-sailing agreement for fees because Defendants promised not to oppose Plaintiffs' request for attorneys' fees of 25% of the Settlement Fund. (Doc. 129-1 at 44).  This concern was compounded due to the Court's initial understanding that the Agreement promoted a fee award grossly greater than the actual fees estimated.  However, the parties have since clarified their request for fees and sufficiently dispelled any reservations regarding disproportionality.  *See supra* Section III.A(2)(a).

Although there is a clear-sailing agreement for fees, Plaintiffs' petition for fees nonetheless remains subject to Court approval.  (Doc. 144 at 27).  And to be sure, the Proposed Settlement Agreement protects the interest of the Class by providing that "the Court's failure to approve, in whole or in part, any award for attorneys' fees shall not prevent the Settlement Agreement from becoming effective, nor shall it be grounds for termination." (Doc. 129-1 at 44).

In sum, Plaintiffs have alleviated the concerns identified in the 2022 Order with respect to the first and second *Bluetooth* factors.  There are no obvious deficiencies in the Proposed Settlement Agreement.

### 3. Factor Four: Settlement Fund Within Range of Possible Approval

Last, the Court will reconsider the proposed Settlement Fund amount in light of the parties' supplemental documents. In their Initial Motion, Plaintiffs represented the "maximum, reasonable, nontrebled" recovery award for this lawsuit is $35,000,000. (Doc. 129 at 21–22). They concluded the $13,000,000 Settlement Fund, which is roughly 37% of estimated damages, was well within reason because even a fractional recovery may be fair in light of the uncertainties, delay, and expense of trial. *Id.* (citing *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 611 (E.D. Cal. 2015)). The Court found this explanation hollow because Plaintiffs did not provide any concrete information to justify their calculations. (Doc. 136 at 28).

In their Renewed Motion, Plaintiffs attach the parties' quantitative analysis that supports the maximum value estimate at $35,000,000. (Doc. 145-2) (Indirect Corporate Cost Analytical Work-Up). The analysis references Defendants' indirect corporate cost summaries from 2011–2021 (Docs. 144-6; 144-9) and "presents a year-by-year recap of the total net adjusted Indirect Corporate Costs passed on to [] Class members" that totals $35,275,633. (Docs. 144 at 16–17; 145-2). Plaintiffs represent this figure constitutes the maximum because it would be "achieve[d] [] only if the Court or jury were to categorically reject all of the Defendants' challenges to the merits and damages claims[.]" (Doc. 144 at 12).

Plaintiffs' additional documents competently supports their calculations for the Settlement Fund. And the Court agrees that the $13,000,000 Settlement Fund falls within the "range of reasonableness" as 37% of the estimated maximum of non-trebled compensatory damages. (Doc. 144 at 13–14); *see Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998)) ("[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial."); *see e.g.*, *In re*

*Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2018 WL 6198311, at *6 (N.D. Cal. Nov. 28, 2018) (approving a settlement fund that constituted "33 percent of th[e] projected maximum recovery").  And if Class Counsel obtains an attorneys' fees award equivalent to 25% of the Settlement Fund ($3,250,000), the amount of the Settlement Fund available for distribution to class members would be equivalent to 27% of their maximum recovery.  *See e.g.*, *In re Volkswagen*, 2018 WL 6198311, at *6 (approving a settlement fund that ultimately allowed for 24% of the class members' maximum recovery after 25% of funds were allocated for attorneys' fees).  Thus, the amount of the $13,000,000 Settlement Fund is preliminarily approved.

In sum, Plaintiffs have adequately showed their work behind the Proposed Settlement Agreement and allayed all concerns identified in the 2022 Order.  The Court will preliminarily approve the Agreement because it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious-deficiency, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval."  *Horton*, 266 F.R.D. at 363 (internal quotation and citation omitted).

## C.   Proposed Class Notice and Administration

The Court next turns to the parties' proposed methods and forms of notice to the Class.   Rule 23(c)(2)(B) governs the requirements for notices in Rule 23(b)(3) class actions:

> [T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. . . . The notice must clearly and concisely state in plain, easily understood language[]
>
> (i)     the nature of the action;
>
> (ii)    the definition of the class certified;
>
> (iii)   the class claims, issues, or defenses;
>
> (iv)    that a class member may enter an appearance through an attorney if the member so desires;
>
> (v)     that the court will exclude from the class any member who requests

exclusion;

(vi)   the time and manner for requesting exclusion; and

(vii)  the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).   The notice may be distributed by United States mail, electronic means, or other appropriate means.  *Id*.  In addition, due process requires the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Proposed Settlement Agreement details a Notice Program (Doc. 129-1 at 29–34) and includes three notice forms: (1) a Proposed Postcard Notice (Doc. 129-2); (2) a Proposed Email Notice (Doc. 129-3); and (3) a Proposed Long Form Notice (Doc. 129-4).   The Notice Program also provides for "the creation of a Settlement Website that will provide additional information and documents, including the operative pleadings and the Long Form Notice."  (Doc. 144 at 40).

### 1.    Notice Methods

The Notice Program names JND Legal Administration as Settlement Administrator[7] and directs notice be distributed in one of three ways: "(1) Email Notice shall be the primary form and notice and sent to all Class Members for whom DRM has provided email addresses; (2) Postcard Notice sent by U.S. mail only to Class Members for whom DRM does not have valid email addresses or for whom Email Notice bounces back as undeliverable; (3) and Long Form Notice, which shall be written in both English and Spanish, and shall be available on the Settlement Website and via mail upon a Class Member's request to the Settlement Administrator."  (Doc. 129-1 at 32–33).   DRMI agrees to provide the Settlement Administrator with a Class Membership List containing, among other things, each Class Member's name, last known address, email address

---

[7] The Settlement administrator is tasked with, among other things, determining and allocating each Class Member's *pro rata* interest in the Settlement Fund, managing the Settlement Website, and carrying out the Notice Program.  (Doc. 129-1 at 27–29).

(if available), and assessment fees incurred between 2011–2022.  (*Id*. at 26).

Courts in this circuit have approved similar notice programs that dispersed short-form notice by email where possible and, alternatively, by mail to class members for whom there are no known email addresses.  *See e.g.*, *Corcoran v. CVS Health*, 2019 WL 6250972, at *9–10 (N.D. Cal. Nov. 22, 2019); *In re MyFord Touch Consumer Litig.*, 2019 WL 1411510, at *4 (N.D. Cal. Mar. 28, 2019).  Rule 23(c)(2)(B) indeed allows electronic notice to class members in certain situations, and the parties have established a procedure for obtaining the necessary information of the Class Members.  *See* Fed. R. Civ. P. 23(c)(2)(B).  Thus, the Court finds the Notice Program's distribution method is proper.

### 2.  Notice Forms

The Court next reviews the contents of the three notice forms.  All forms are made up of easily understandable questions and answers concerning the Proposed Settlement Agreement and the litigation.  The Proposed Postcard and Email Notices are identical and summarize the Proposed Long Form Notice.  (*Compare* Doc. 129-2 *with* Doc. 129-3).  These short-form notices meet the requirements of Rule 23(c)(2)(B) because they describe the nature of the action; define the Class; state the issues; outline recovery and release under the Proposed Settlement Agreement; inform Class Members they can appear at the fairness hearing; and refer Class Members to the Proposed Long Form Notice on the Settlement Website for instructions on how to opt out of the settlement or object at the fairness hearing.  (*Id*.)  However, the Court notes the Proposed Postcard and Email Notices only state the date and time of the fairness hearing.  Both documents should be revised to also include the Court's address and courtroom number.

The Proposed Long Form provides greater details on the components listed in the Proposed Postcard and Email Notices, including the background of the State Inspection Action, the functions of non-monetary benefits provided by the Agreement, and how Class Counsel will be paid.  (Doc. 129-4).  The Proposed Long Form meets due process requirements because it explains to the Class their rights to opt out of or object to the

Proposed Settlement Agreement, and the deadlines by which to exercise those rights.

Contingent on the revisions identified above, the parties' Notice Program, Proposed Postcard Notice, Proposed Email Notice, and Proposed Long Form Notice are approved.  The Court believes email and direct mail, with all reasonable efforts made to obtain updated addresses, is the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

**IV.    Conclusion**

The Court preliminarily approves the Proposed Settlement Agreement as sufficiently fair, reasonable, and adequate to allow the dissemination of notice of the Agreement to the Class.  Plaintiffs have amply supplemented the record to rectify all prior deficiencies identified in the 2022 Order.  The Notice Program and three notice forms are approved so long as the parties perform the following revisions: the Proposed Postcard and Email Notices should state the Court's address and courtroom number to direct Class Members to the fairness hearing.

**Accordingly, IT IS ORDERED as follows:**

**I.**    The Court preliminarily approves the Settlement Agreement and Release (Doc. 129-1) as sufficiently fair, reasonable, and adequate to allow the dissemination of notice of the Settlement Agreement and Release to the Class.  This determination permitting notice to the Class is not a final finding, but a determination that there is sufficient cause to submit the Settlement Agreement and Release to the Class and to hold a Final Approval Hearing to consider the fairness, reasonableness, and adequacy of the Settlement Agreement and Release.

**II.**    The Court appoints as third-party Settlement Administrator: JND Legal Administration.

**III.**    The Court approves the Postcard Notice, Email Notice, and Long Form Notice, not materially different from those filed at (Docs. 129-2; 129-3; 129-4), provided the Postcard and Email Notices be revised to state the Court's address and courtroom number to direct Class Members to the fairness hearing.

The proposed methods and forms for notifying the Class Members of the settlement and its terms and conditions meet the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process, constitute the best notice practicable under the circumstances, and constitute due and sufficient notice to all persons entitled to the notice.  The Court finds that the proposed notice forms are clearly designed to advise the Class Members of their rights.

In accordance with the Settlement Agreement and Release, Defendant Diamond Resorts Management, Inc. shall provide the Class Membership List to the Settlement Administrator **within twenty-one (21) days of the issuance of this Order.**  The Class Membership List shall include (1) the name, last known address and, to the extent available, email address of each Class Member; and (2) the amount each Class Member was assessed in Assessments for each Calendar Year between 2011 and 2022.

In accordance with the Settlement Agreement and Release, the Settlement Administrator will carry out notice to the Class Members as expeditiously as possible, but no later than **thirty (30) days after the issuance of this Order.**

**IV.**     Any Class Member who desires to be excluded from the class must comply with the terms set forth in the Long Form Notice and submit an appropriate and timely request for exclusion that is postmarked **no later than forty-five (45) days before the Final Approval Hearing**.  Any Class Member who submits a valid and timely request for exclusion will not be bound by the terms of the Settlement Agreement and Release.

**V.**     Any Class Member who does not timely request exclusion as set forth in the Long Form Notice and who intends to object to the fairness of this settlement must comply with the terms set forth in the Long Form Notice and file a written objection with the Court **no later than forty-five (45) days before the Final Approval Hearing**.  Any such Class Member must also mail a copy of the written objection, within the same period, to (1) Edward Louis Barry; Law Office of Edward L. Barry; 2120 Company St., Third Floor; Christiansted, Virgin Islands 00820; (2) Phelps & Moore, PLLC; 7430 East Butherus Drive, Suite A; Scottsdale, Arizona 85260; and (3) Julie Singer Brady and

Brandon Crossland; Baker & Hostetler, LLP; 200 South Orange Avenue; Orlando, Florida 32801.

Any Class Member who has timely filed an objection must appear at the Final Approval Hearing, in person or by counsel, and be heard to the extent allowed by the Court, applying applicable law, in opposition to the fairness, reasonableness and adequacy of the Settlement, and on the application for an award of attorneys' fees and costs. The right to object to the Settlement Agreement and Release must be exercised individually by an individual Class Member, not as a member of a group or subclass and, except in the case of a deceased, minor, or incapacitated Class Member, not by the act of another person acting or purporting to act in a representative capacity.

**VI.**    The Court will conduct an in-person Final Approval Hearing on **February 8, 2024,** at 10:00 AM at the United States District Court for the District of Arizona, Sandra Day O'Connor U.S. Courthouse, Courtroom 605, 401 West Washington Street, Phoenix, AZ 85003-2158, to review and rule upon the following issues:

**A.**    Whether this action satisfies the applicable prerequisites for class action treatment for settlement purposes under Fed. R. Civ. P. 23;

**B.**    Whether the Settlement Agreement and Release is fundamentally fair, reasonable, adequate, and in the best interest of the Class Members and should be approved by the Court;

**C.**    Whether a Final Order and Judgment, as provided under the Settlement Agreement and Release, should be entered, dismissing the Lawsuit with prejudice and releasing the Released Claims against the Released Parties; and

**E**.    To discuss and review other issues as the Court deems appropriate.

**VII.**    The Court reserves the right to adjourn or to continue the Final Approval Hearing, or any further adjournment or continuance thereof, without further notice other than announcement at the Final Approval Hearing or at any adjournment or continuance thereof; and to approve the settlement with modifications, if any, consented to by Class Counsel and Defendants without further notice.

**IT IS FURTHER ORDERED** that Plaintiffs' Unopposed Renewed Motion for Preliminary Approval of Settlement, Approval of Notice (Doc. 144) is **GRANTED**.

Dated this 5th day of September, 2023.

Honorable Diane J. Humetewa
United States District Judge