**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Norman Zwicky, et al.,

            Plaintiffs,

v.

Diamond Resorts Incorporated, et al.,

            Defendants.

No. CV-20-02322-PHX-DJH

**AMENDED ORDER[1]**

This matter is before the Court on Plaintiffs Norman Zwicky ("Zwicky"), George Abarca ("Abarca"), Vikki Osborn ("Osborn"), and Elizabeth Stryks-Shaw's ("Stryks-Shaw") (collectively "Plaintiffs") "Unopposed Motion for Final Approval of Class Action Settlement" (Doc. 159) (the "Final Approval Motion") and "Motion for Attorneys' Fees, Costs, and Service Awards" (Doc. 158) (the "Awards Motion"). On February 12, 2024, the Court held a Final Approval Hearing under Federal Rule of Civil Procedure 23 to determine whether settlement in this class action suit is proper. (Doc. 163) (the "Final Hearing").  The Court found the terms of the parties' settlement is fundamentally fair, reasonable and adequate.  (*Id.*)  Therefore, as set forth below, the Court grants Plaintiffs' Final Approval Motion and Awards Motion.

/ / /

/ / /

---

[1] The Court's April 16, 2024, Order (Doc. 164) mistakenly referenced a non-party on page 15 lines 7–8.  The Amended Order correctly identifies the Defendants in this matter.

## I.      Background[2]

Plaintiffs are among approximately 25,000 current or former owners of timeshare interests that were acquired or sold by Defendants Diamond Resorts International, Inc. ("DRI") and Diamond Resorts Management, Inc. ("DRMI") (collectively the "Corporate Defendants"), who are also members of the Premiere Vacation Collection Owners Association ("PVCOA").  (Doc. 109 at ¶ 12, 13).  DRMI is a property management company and wholly owned subsidiary of DRI that continues to serve as the managing agent of the PVCOA.  (*Id.* at ¶ 77).  ILX Acquisition, a subsidiary of DRI, is a member of the PVCOA that holds a "Bulk Membership" consisting of DRI's unsold timeshare inventory. (*Id.* at ¶ 61).  Defendants Troy Magdos and Kathy Wheeler (collectively the "Defendant Individuals") are employees of DRI.  (*Id.* at ¶¶ 4, 97, 99).  DRI, DRMI, Troy Magdos, and Kathy Wheeler are the Defendants in this action.

### A.      Plaintiffs' Allegations

This suit stems from a 2015 state action that Zwicky filed in the Maricopa County Superior Court seeking to enforce his statutory and common law inspection rights as a timeshare owner.  *See Zwicky v. Premiere Vacation Collection Owners Ass'n*, No. CV2015-051911 (Ariz. Super. 2015) (the "State Inspection Action").  Zwicky questioned why he was charged annual assessments and fees that were materially higher than previous years. *See generally id*.  In August 2021, Plaintiffs filed their Third Amended Class Action Complaint ("TAC") (Doc. 109) and brought three causes of action: Count I against all Defendants for violation of the Federal Racketeering Influenced and Corrupt Organization Act ("Federal RICO"), 18 U.S.C. § 1961 *et seq*.; Count II against all Defendants for violation of the Arizona Civil Racketeering Statute ("Arizona RICO"), A.R.S. § 13- 2312(B); and Count III against Defendant Individuals for breach of fiduciary duty.  (*Id*. at ¶¶ 130–85).  In short, the TAC alleged Defendants failed to disclose certain charges and overcharged timeshare owners annual assessments by imposing those hidden costs as ordinary common expenses. (*See* Doc. 144 at 4).

---

[2] The Court incorporates by reference the extensive background provided in its prior Orders.  (Docs. 102 at 1–5; 136 at 1–4).

**B.      The Parties' Proposed Settlement**

In October 2021, the parties sought a sixty (60) day stay of the case so they could engage in mediation (Doc. 117), which the Court granted. (Doc. 118).  The parties engaged in mediation and reached an agreement on November 4, 2021, to resolve this case in its entirety on a class wide basis.  (Doc. 120 at 3).  The parties memorialized their final agreed upon terms in the proposed "Settlement Agreement and Release" (Doc. 129-1) (the "Agreement"), Postcard Notice (Doc. 129-2), Email Notice form (Doc. 129-3), and Long Form Notice (Doc. 129-4) (together the "Notice Forms").[3]  Plaintiffs subsequently filed their initial Motion for Preliminary Certification of Class for Settlement Purposes Only, Preliminary Approval of Settlement, and Approval of Notice (Doc. 129) (the "Initial Motion") under Rule 23.

The Agreement defines the Proposed Settlement Class as follows:

> [A]ll current and former [m]embers of the [PVCOA] who were assessed Assessments for any Calendar year(s) from 2011 through and including 2022, excluding ILX [Acquisition] and any entity that received any bulk transfer/assignment of ILX [Acquisition]'s Bulk Membership in the [PVCOA]. Excluded from the Class are DRI, DRM, their parents, subsidiaries, successors, affiliates, current officers and directors and all judges assigned to the [a]ction and their immediate family members.

(Doc. 129-1 at ¶ 11).  The Agreement provides for both monetary and non-monetary terms in order to resolve all claims.

First, as to monetary terms, the Corporate Defendants agree to deposit a $13,000,000 common cash Settlement Fund in an Escrow Account.  (*Id.* at ¶ 55, 24).[4]  JND

---

[3]  The Agreement's Notice Program names JND Legal Administration as Settlement Administrator and directs notice be distributed in one of three ways: "(1) Email Notice shall be the primary form and notice and sent to all Class Members for whom DRM has provided email addresses; (2) Postcard Notice sent by U.S. mail only to Class Members for whom DRM does not have valid email addresses or for whom Email Notice bounces back as undeliverable; (3) and Long Form Notice, which shall be written in both English and Spanish, and shall be available on the Settlement Website and via mail upon a Class Member's request to the Settlement Administrator." (Doc. 129-1 at 32–33).

[4]  The Agreement exempts the Defendant Individuals from "funding any portion of the Settlement Fund, or paying any other cost, fee, tax or other charge arising out of or in connection with this Agreement." (Doc. 129-1 at ¶ 55).

Legal Administrator will be the Settlement Administrator that establishes and manages the Escrow Account.  (*Id*. at ¶ 51, 24).  The parties propose the following initial payments be made from the Settlement Fund: (1) four Service Awards totaling to $14,500 — $10,000 to Zwicky and $1,500 each to Abarca, Osborn, and Stryks-Shaw; (2) costs of class notice settlement administration; and (3) attorneys' fees and litigation costs.  (*Id*. at ¶¶ 82–84). The remainder of the Fund will then be distributed *pro rata* to all Proposed Class Members who do not opt-out of the settlement based on the total dollar amount of assessments each Class Member was assessed for calendar years 2011 through and including 2022. (*Id*. at ¶ 85–87).   Any funds that remain one-hundred-eighty (180) days after the checks are mailed due to unclaimed checks will be re-distributed *pro rata* to the Class Members who accepted their share of the initial distribution.  (*Id*. at ¶ 88–89).  Any residual funds thereafter will be distributed to Habitat for Humanity as the *cy pres* recipient.  (*Id*. at ¶ 89).

Second, the Corporate Defendants agree to non-monetary terms that ensure PVCOA will only engage DRM, or any of its affiliates, as its Manager pursuant to a written Management Contract that complies with all "Management Requirements"[5] as listed in the Agreement. (*Id*. at ¶ 62). DRM will propose an amended Management Contract to the PVCOA Board on or before February 28, 2024, that (1) discloses the calculation of the "Management Fee" payable by the PVCOA to its Manger; (2) limits the Management Fee to not exceed 15%[6] of the total assessments assessed upon PVCOA members each Fiscal Year; (3) imposes reporting requirements in compliance with all Management Requirements with respect to the preparation of itemized annual operating and reserve budgets, and the provision of such budgets to PVCOA members; and (4) requires budgets and financial statements to disclose all common expenses and operating costs of the Collection, any related party transaction disclosures, and any material reimbursement or absorption or allocation of internal expenses of the Manager.  (*Id*.)

---

[5]  The Management Requirements are comprised of Arizona Timeshare Owners' Association and Management Act (A.R.S. § 33-2201 et. seq.); the Arizona Real Estate Timeshares Act (A.R.S. § 33-2197 et. seq.); and all Collection Instruments.  (Doc. 129-1 at ¶ 62).

[6] This percentage cap is subject to amendment.  (Doc. 129-1 at ¶ 62).

Upon consideration of Plaintiffs' Initial Motion, the Court preliminary certified this matter as a class action but declined to approve the Agreement because it was unsupported by appropriate documentation.  (*See generally* Doc. 136) (the Court's November 15, 2022 Order).  Plaintiffs later filed an "Unopposed Renewed Motion for Preliminary Approval of Settlement, Approval of Notice" (Doc. 144) (the "Renewed Motion").  The Court granted Plaintiffs' Renewed Motion because Plaintiffs sufficiently supplemented the record with documentation regarding the Agreement.  (Doc. 149) (the Court's September 6, 2023, Order) ("Preliminary Approval Order").  In so doing, the Court preliminarily approved the Agreement, approved the Notice Forms to be disseminated to the Class, and set the date and time of the Final Hearing.  (*Id*.)

### C.    The Final Hearing

The Final Hearing was held on February 12, 2024, under Rule 23 to determine whether the proposed settlement is fundamentally fair, reasonable, adequate, and in the best interest of the Class Members. (Doc. 163).  In advance of the Final Hearing, Plaintiffs filed their Final Approval Motion, representing that the Objections Deadline passed on December 26, 2023, and, as of December 18, 2023, no objections were received and three (3) Class Members had opted out of the action.  (Doc. 154 at 8).  They also summarized their notice efforts as follows: of the 26,837 Email Notices sent, 23,113 were delivered (representing 19,750 unique Settlement Class Members), and 3,092 were unsuccessful; of the 3,933 Postcard Notices sent to Class Members without a valid email address on file and the 3,092 Postcard Notices sent to Class Members whose Email Notices were unsuccessful, 1,679 Postcard Notices were returned as undeliverable, with 9 remailed to forwarding addresses and 569 remailed after additional research; and of the 579 remailed Postcard Notices, 160 were returned of which 1 was remailed to a forwarding address.  (*Id*. at 7).

At the Final Hearing, the parties confirmed the statistics supporting their notice efforts, and updated the Court that a total of eight (8) members had opted out of the action. The Parties further calculated that the final Class total is comprised of 25,615 members— the individuals who effectively received notice. One (1) Class Member appeared at the

Final Hearing, representing that she had owned timeshare interest for a period of time but has since sold it.  Counsel clarified that her sale of interest does not preclude her from recovering in this action, and that she will receive a share of the Settlement Fund that is proportionate to the fees she incurred during the years she held her interest between 2011–2022.  This is consistent with the uniform formula that will be applied to calculate each Class Members' recovery interest: each Class Member's percentage of the total amount of Assessments assessed to the Class for the calendar years 2011 through 2022 will be used determine each Class Member's pro rata interest in the Settlement Fund.  (*See* Doc. 129-1 at ¶ 87).  The parties went on to explain the average estimate of recovery for each Class Member is $370, but that recovery is based on different variables so each Class Member's recovery could range between $20 to $5,000–$10,000.

The Court found the monetary terms of the Agreement to be reasonable, including the $10,000 service award to Zwicky and $1,500 service awards each to Abarca, Osborn, and Stryks-Shaw.  The Court further noted that the non-monetary terms of the Agreement required DRM to propose an amended Management Contract to the PVCOA Board on or before February 28, 2024 (*id.* at ¶ 62), yet the Final Hearing was not set until February 12, 2024.  Defendants requested the deadline be extended to ninety (90) days after the Court's final approval of the settlement and explained that the extension would not delay distribution of the Settlement Fund.  The Court granted Defendants the extension and further ordered Defendants to provide a copy of their proposed amended Management Contract to Plaintiffs' counsel on the same extended deadline.

## II.    Discussion

The Court has read and considered the Agreement, Final Approval Motion, Awards Motion, and the record as a whole, and makes the following findings:

### A.    Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b).  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–22 (9th Cir.

1998).  Because no facts that would affect these requirements have changed since the Court preliminarily approved the class on November 15, 2022, this Order incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the Preliminary Approval Order.  (Doc. 136 at 8–17).  Accordingly, class certification is granted.

### B.   Settlement Agreement

The Court finds that the Class Members were given a fair and reasonable opportunity to object to the settlement and that no class member objected.  The eight (8) Class Members who made a valid and timely request for exclusions will be excluded from the Class and are not bound by this Order.  The Court further finds that the settlement of this matter, on the terms and conditions set forth in the Agreement, is in all respects fundamentally fair, reasonable, adequate, and in the best interest of the Class Members, especially in light of the benefits to the Class Members; the strength of the Plaintiffs' alleged claims; the strength of Defendant's alleged defenses; the complexity, expense, and probable duration of further litigation; the risk and delay inherent in possible appeals; the risk of collecting any judgment obtained on behalf of the Class; and the amount of any potential total recovery for the Class.

As to the monetary terms, the Agreement requires Corporate Defendants to create a the $13,000,000 Settlement Fund in two installments: (1) the Corporate Defendants will deposit $75,000 into the Escrow Account within ten (10) days of the Court's preliminary approval of the settlement; and (2) the Corporate Defendants will deposit the remaining $12,925,000 into the Escrow Account within thirty (30) days of the Court's final approval of the settlement.  (Doc. 129-1 at ¶ 55, 80–81).  Defendants represent that the first installment was timely completed.  (Doc. 159 at 5).  Therefore, the Corporate Defendants shall deposit the remaining $12,925,000 into the Escrow Account within thirty (30) days of the issuance of this Order, and the Settlement Administrator shall distribute the Settlement according to the terms of the Agreement.  As to the non-monetary terms, DRM shall propose an amended Management Contract to the PVCOA Board within ninety (90) days of the issuance of this Order and also provide a copy of the proposed contract to Class

1  Counsel.

2  **C.    Awards for Attorney Fees and Costs**

3       Class Counsel has also filed an Awards Motion (Doc. 158), of which there is no
4  opposition from the Class Members or Defendants.  (Doc. 157).  In its November 15, 2022,
5  Order, the Court appointed as Class Counsel Jon L. Phelps, Robert Moore, and Jennie
6  Tetreault of Phelps & Moore PLLC; and Edward L. Barry of Law Office of Edward L.
7  Barry.  (Doc. 136 at 30).  The Awards Motion proposes that, according to the Agreement,
8  (1) 25% of the Settlement Fund ($3,250,000)[7] will be awarded for Class Counsel's
9  reasonable attorneys' fees (Docs. 158 at 2; 129-1 at ¶ 97); (2) $22,335.45 of the Settlement
10 Fund will awarded to reimburse Class Counsel's  litigation expenses (Docs. 158 at 2; 129-
11 1 at ¶ 97); and (3) $14,500 of the Settlement Fund will be awarded as Plaintiffs' service
12 awards  (Docs. 158 at 18–20; 129-1 at ¶ 99).  Although the Court approved the Agreement
13 and the Plaintiffs' service awards at the Final Hearing, the Court took Class Counsel's
14 request for attorneys' fees and costs under advisement.   The Court finds that Class
15 Counsel's request for reimbursement of costs $22,335.45 is warranted as it is comprised of
16 mediator fees, travel expenses, court filing fees, process server fees, shipping fees, and
17 other administrative expenses.  (Docs. 158-1 at ¶ 38; 158-2 at ¶ 17).  The Court will proceed
18 to consider the reasonableness of Class Counsel's $3,250,000 fee request.

19      When considering a request for fees, the court maintains "an independent obligation
20 to ensure that the award, like the settlement itself, is reasonable, even if the parties have
21 already agreed to an amount."  *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d
22 935, 941 (9th Cir. 2011).  "[Where] a settlement produces a common fund for the benefit
23 of the entire class, courts have discretion to employ either the lodestar method or the
24 percentage-of-recovery method" in determining reasonable attorneys' fees.  *Id*. at 942.
25 Courts calculate the "lodestar" amount by "multiply[ing the] number of hours reasonably
26 expended by attorneys on the litigation by reasonable hourly rate, [and] raising or lowering

27
28 _____
   [7] 25% of 13,000,000 is $3,250,000.

- 8 -

lodestar according to factors identified by this circuit."[8]  *McElwaine v. US W., Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999); *see also In re Bluetooth*, 654 F.3d at 942.  Under the percentage-of-recovery method, the "benchmark" is 25% which can be adjusted up or down if there are "special circumstances."[9] *McElwaine*, 176 F.3d at 1173.  District courts may also cross-check the reasonableness of a percentage award by comparing it to a lodestar calculation and risk multiplier. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002).  In any event, the Court must support an attorneys' fees award with "findings that take into account all of the circumstances of the case." *Id*. at 1048.  However, "[t]he Ninth Circuit has instructed that because the amount of fees is often open to dispute and because the parties [have] compromise[d] to avoid further disputes, the district court need not inquire into the reasonableness of fees with the same level of scrutiny as when the amount of fees is litigated."  *Wood v. Ionatron, Inc.*, 2009 WL 10673479, at *5 (D. Ariz. Sept. 28, 2009) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th Cir. 2003)).

Here, Class Counsel is entitled to an award of reasonable attorneys' fees and expenses in connection with the approved Agreement.  Fed. R. Civ. P. 23(h); 18 U.S.C. § 1964(c) (the Federal RICO's fee-shifting statute); A.R.S. § 13-2314.04(A) (the Arizona RICO's fee-shifting statute).  The Court will first evaluate the $3,250,000 fee request under the percentage-of-recovery method and then assess the reasonableness of it by comparing the percentage award to a lodestar calculation.

---

[8] To determine whether a request is reasonable under the lodestar method, courts assess the following factors: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases."  *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976); *see also* LRCiv 54.2(c)(3).

[9] To determine whether a request is reasonable under the percentage-of-recovery method, courts assess the following factors: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases."  *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *1 (N.D. Cal. Feb. 6, 2013) (citing *Vizcaino*, 290 F.3d at 1048–50)).

### 1.      Percentage-of-recovery Method

The fee agreement between Plaintiffs and Class Counsel provides for a 25% award ($3,250,000) from the gross Settlement Fund, which is the benchmark amount in the Ninth Circuit.  *McElwaine*, 176 F.3d at 1173.  The Court finds the requested award is reasonable in light of the parties' representations that the total recovery achieved in this matter equals over 37% of the alleged damages incurred by Class Members.  (Doc. 158 at 8); *see Boyd v. Bank of Am. Corp.*, 2014 WL 6473804, at *9 (C.D. Cal. Nov. 18, 2014) (awarding 33% in fees when the common fund represented recovery of 36% of estimated damages).  The Agreement further provides for non-monetary relief.  *Id.* (characterizing a settlement providing for both monetary and non-monetary relief as an "exceptional result for the class").  The Court also takes into consideration that Class Counsel has leveraged their resources, experience, and knowledge to prosecute Plaintiffs' case for the last nine years through the State Inspection Action on a "purely contingent" nature.  (Doc. 158  at 12–13).  The requested amount under the percentage-of-recovery method is also supported by applicable case law.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming attorneys' fee award of 33% of the $12,000,000 settlement fund); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (same).

### 2.      Lodestar Cross-check

The Court will proceed to cross-check the fee request with the lodestar amount. Upon review of Plaintiff's Awards Motion and all documents submitted in support thereof, including Class Counsel's itemized time sheets and expenses (Doc. 158-2 at 7–23) and supporting affidavits (Docs. 158-1; 158-2 at 1–6), the Court finds the approximately 2,300 hours[10] of work performed by Class Counsel over the last nine years  were reasonably spent on this matter.  (Doc. 158 at 2).  Class Counsel further represents they intend to charge attorney rates ranging from $350–$400 per hour (Docs. 158-1 at ¶¶ 17–26; 158-2 at ¶ 13) and paralegal rates ranging from $115–$145 per hour (Doc. 158-1 at ¶ 5), all of which have

---

[10] Phelps & Moore PLLC represents its attorneys spent 1,102.7 hours on this matter and its paralegal spent 110.5 hours.  (Doc.158-1 at ¶ 15–27).  Edward L. Barry represents he spent approximately 1,015.5 hours on this matter.  (Doc. 158-2 at ¶ 12).  1,102.7 plus 110.5 plus 1,015.5 equals 2,228.7 hours.

been recognized as reasonable in this district for the purpose of calculating fee awards. *See Ecoshield Pest Sols. N. DC LLC v. Dixon*, 2022 WL 2117844, *4 (D. Ariz. June 13, 2022) (holding that attorney fees of $350 to $400 per hour are reasonable); *Casavelli v. Johanson*, 2021 WL 3400608, *8 (D. Ariz. July 20, 2021), *aff'd*, 2022 WL 4115495 (9th Cir. Sept. 9, 2022) (holding that attorney fees of $350 to $400 per hour and billing rates for clerks and paralegal ranging from $90 to $250 per hour were reasonable). When multiplying the hours worked by each Class Counsel member's hourly rate, the presumptive reasonable attorney fees under the lodestar method is $837,760, which results in a lodestar multiplier of less than 3.88.[11] (Doc. 158-1 at ¶ 31). Other courts in this Circuit have found that "[m]ultipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation." *Dakota Med., Inc. v. RehabCare Grp., Inc.*, 2017 WL 4180497, at *8 (E.D. Cal. Sep. 21, 2017) (quoting *Van Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294, 298 (N.D. Cal. 1995)); *see e.g.*, *Vizcaino*, 290 F.3d at 1051 (approving a 3.65 multiplier as reasonable and noting that, in common fund cases, "attorneys whose compensation depends on their winning the case [] must make up in compensation in the cases they win for the lack of compensation in the cases they lose"). This Court will follow suit. Furthermore, the parties reached an agreement on the fee award following an arms-length negotiation, the Notice Forms expressly advised Class Members that Class Counsel would seek up to $3,250,000 in attorneys' fees, and no Class Member objected to this. (Docs. 129-4 at 6; 129-3 at 1; 129-2 at 2). The Court will therefore grant the Awards Motion and award Class Counsel $3,250,000 for reasonable attorneys' fees and $22,335.45 for reasonable costs and expenses to be paid out of the Settlement Fund.

Accordingly,

**IT IS ORDERED** that:

1.      <u>Jurisdiction</u>: The Court has jurisdiction over the subject matter of the Lawsuit and over all settling parties hereto.

2.      <u>Class Members</u>: The Lawsuit is hereby certified under Federal Rules of Civil

---

[11] The requested $3,250,000 fee award is 3.879 times the $837,760 lodestar amount.

Procedure 23(a) and (b)(3) as a class action on behalf of all current and former members of the Premiere Vacation Collection Owners Association, who were assessed Assessments for any Calendar year(s) from 2011 through and including 2022, excluding ILX Acquisition and any entity that received any bulk transfer/assignment of ILX Acquisition's Bulk Membership in the Premiere Vacation Collection Owners Association. Excluded from the Class are Diamond Resorts International, Inc., Diamond Resorts Management, Inc., their parents, subsidiaries, successors, affiliates, current officers and directors and all judges assigned to the Action and their immediate family members. The Class Period is July 31, 2010 through October 5, 2023 (the date of notice to the Class).

3. <u>Class Representative Appointments</u>: The Court certifies Plaintiffs Norman Zwicky, George Abarca, Vikki Osborn, and Elizabeth Stryks-Shaw as Class Representatives under Federal Rule of Civil Procedure 23.

4. <u>Class Counsel Appointments</u>

The Court certifies Jon L. Phelps, Robert Moore, and Jennie Tetreault of Phelps & Moore PLLC; and Edward L. Barry of Law Office of Edward L. Barry as Class Counsel for the Class Members under Federal Rule of Civil Procedure 23.

5. <u>Settlement Administrator Appointment</u>: The Court appoints JND Legal Administration as the third-party Settlement Administrator under the Settlement Agreement and Release.

5. <u>Class Notice and Claim Form</u>: Class action notices and claim forms were mailed to all of the Class Members. The form and method for notifying the Class Members of the settlement and its terms and conditions satisfied the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and due process, and constituted the best notice practicable under the circumstances. The Court finds that the proposed notice forms were clearly designed to advise the Class Members of their rights. The notice requirements of the Class Action Fairness Act, 28 U.S.C. § 1715(d) have been satisfied.

5. <u>Class Certification</u>: The Lawsuit satisfies the applicable prerequisites for class action treatment under Federal Rule of Civil Procedure 23, namely:

a.     the Class Members are so numerous that joinder of all of them in the Lawsuit is impracticable;

b.     there are questions of law and fact common to the Class Members, which predominate over any individual questions;

c.     Plaintiffs' claims are typical of the claims of the Class Members;

d.     Plaintiffs and Class Counsel have fairly and adequately represented and protected the interests of all of the Class Members; and

e.     Class treatment of these claims will be efficient and manageable, thereby achieving an appreciable measure of judicial economy, and a class action is superior to other available methods for a fair and efficient adjudication of this controversy.

6.     <u>Fairness</u>: The settlement of the Lawsuit, on the terms and conditions set forth in the Settlement Agreement and Release and as set forth below, is in all respects fundamentally fair, reasonable, adequate, and in the best interest of the Class Members, especially in light of the benefits to the Class Members; the strength of Plaintiffs' alleged claims; the strength of Defendants' alleged defenses; the complexity, expense, and probable duration of further litigation; the risk and delay inherent in possible appeals; the risk of collecting any judgment obtained on behalf of the Class; and the limited amount of any potential total recovery for the Class; and the fact that Defendants are paying to the Class roughly 37% of estimated damages.

7.     <u>Agreement Terms</u>: The Settlement Agreement and Release, which is on file in this case, shall be deemed incorporated herein, and the proposed settlement set forth in the Agreement is finally approved and shall be consummated in accordance with the terms and provisions thereof, except as amended by any order issued by this Court.  The material terms of the Settlement Agreement and Release include, but are not limited to, the following:

a.   Within thirty (30) days of the issuance of this Order, the Corporate Defendants shall deposit the remaining $12,925,000 Settlement Funds into the Escrow Account;

b.   Within five (5) days of the Effective Date, the Settlement Administrator shall make the following payments from the Settlement Fund: (1) Class Representatives' service awards— $10,000 to Norman Zwicky and $1,500 each to George Abarca, Vikki Osborn, and Elizabeth Stryks-Shaw—to compensate them for their unique services in initiating and maintaining this litigation; and (2) Class Counsel's reasonable attorneys' fees of $3,250,000 and reasonable costs of $22,335.45.

c.   Within thirty (30) days of the Effective Date, the Settlement Administrator shall distribute the Settlement Fund *pro rata* to the Class Members based on the total dollar amount of assessments each Class Member was assessed for calendar years 2011 through and including 2022.  The checks to Class Members shall be distributed as provided for in the Agreement.

d.   The Settlement Administrator shall then redistribute any funds that remain 180 days after the Class Member's checks are mailed due to unclaimed checks to the Class Members who accepted their share of the initial distribution on a pro rata basis.

e.   Following the re-distribution, any residual funds will be directed to Habitat for Humanity as the designated *cy pres* recipient.

f.   Within ninety days of the issuance of this Order, Defendants shall propose an amended Management Contract to the PVCOA Board and provide a copy to Class Counsel.

g.   The Settlement Administrator's fees and costs, shall be paid solely out of the Settlement Fund.

8.   <u>Objections and Exclusions</u>: The Class Members were given a fair and reasonable opportunity to object to the settlement. No Class Member objected to the settlement. The Class Members who made valid and timely requests for exclusion are

excluded from the class and settlement and are not bound by this Order.  No other Class Member is excluded. This order is binding on all Class Members.

9.  <u>Release of Claims and Dismissal of Lawsuit</u>.  The individual and class releases set forth in the Settlement Agreement and Release are hereby approved.  Pursuant to the release contained in the Agreement, the Released Claims are hereby compromised, settled, released, discharged, and dismissed with prejudice by these proceedings and this Order. Plaintiffs, the Class Members, and all of their heirs, executors, administrators, successors, assigns, and any person or entity acting for, on behalf of, or for the benefit of any such persons are hereby permanently enjoined from suing upon, pursuing, or demanding any legal or equitable relief for any of the Released Claims, save and except for the compensation set forth herein. This Order, the Agreement, and the existence and nature of the Settlement are not, and shall not be construed as, an admission by Defendants Diamond Resorts International, Inc., Diamond Resorts Management, Inc., Troy Magdos and Kathy Wheeler of any liability or wrongdoing in this or in any other proceeding and may not be used as such.

10.  <u>Miscellaneous</u>: The Court hereby retains continuing and exclusive jurisdiction over the Parties and all matters relating to the Lawsuit and/or Settlement Agreement & Release, including the administration, interpretation, construction, effectuation, enforcement, and consummation of the settlement and this Order.

**IT IS FURTHER ORDERED** that Plaintiffs' "Unopposed Motion for Final Approval of Class Action Settlement" (Doc. 159) is **GRANTED**.  The Parties and Class Counsel are directed to implement this Order and the Settlement Agreement and Release in accordance with the terms this Order and the Agreement.

**IT IS FURTHER ORDERED** that Plaintiffs' "Motion for Attorneys' Fees, Costs, and Service Awards" (Doc. 158) is **GRANTED** in the amount of  $3,250,000 for attorneys' fees and $22,335.45 for costs.  No other attorneys' fees will be sought and awarded other than those agreed to in the Settlement Agreement and Release.

/ / /

**IT IS FINALLY ORDERED** that the Clerk is respectfully directed to enter an amended judgment according to the terms of this Order.

Dated this 19th day of April, 2024.

_____
Honorable Diane J. Humetewa
United States District Judge